IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| SUSAN M. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-06012-CV-W-HFS |
| | ) | |
| UNUM LIFE INSURANCE COMPANY | ) | |
| OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Before the court is the motion of plaintiff, Susan M. Johnson, for summary judgment. Plaintiff seeks recovery of benefits as requested in her claim for Long Term Disability "LTD." Defendant, UNUM Life Insurance Company of America, opposes plaintiff's motion, and has filed a cross motion for summary judgment on the ground that plaintiff failed to exhaust administrative remedies. Defendant seeks remand of this case so that once the requisite medical documentation is received, a decision can be rendered on plaintiff's claim.

**Background Facts**

The facts are largely undisputed, but where controverted, will be noted. Plaintiff began working for Hedrick Medical Center-Saint Luke's Health System in Chillicothe, Missouri on July 19, 1999. Defendant contracted with Hedrick to provide a policy of long term disability insurance to be effective August 1, 1997. Plaintiff worked as a Nutrition Services Worker, and was required

to either stand or walk up to 100% of the time during her work shift. Plaintiff claims that she was also required to lift and carry up to and over 50 pounds during most of her shift, and she also had to perform postural movements of push/pull, reach overhead, squat/bend/kneel and sit. Defendant disputes this statement, and claims that the actual weight requirement was less than 50 pounds for only 26 to 75% of the work shift.

Plaintiff's last day of work was August 20, 2004, and her rate of pay at that time was $1133.21 monthly. Plaintiff claims that pursuant to the terms of the policy, Long Term Disability benefits were to commence after a 90 day elimination period, which here, would have been on or about November 18, 2004. Defendant agrees, but notes that other requirements must also be met in order to be eligible for coverage. On September 29, 2004, plaintiff submitted a claim for LTD coverage, and claimed that she could no longer perform her occupational duties. Defendant claims that plaintiff submitted only a partial claim on September 29th, because the claim did not include the requisite section to be completed by her employer[1]. By letter dated October 4, 2004, defendant advised plaintiff of the need to submit the completed Employer section of the claim form by November 4, 2004. Plaintiff was also advised that the failure to do so would result in the change of her claim status to inactive. The parties agree that defendant received the employer portion of the claim on or about November 4, 2004.

Defendant admits that plaintiff sent medical documentation from her physician, Dr. J. Phil McClure, dated September 4, 2004, and September 28, 2004, who noted that due to breast cancer,

---

[1] According to defendant, the Plan provides that both the employee and employer complete their respective sections, the claim form should then be forwarded to the claimant's physician for completion of the medical portion, and returned to defendant.
Plaintiff has not filed a reply brief, thus, there is no dispute on this issue.

2

plaintiff underwent surgery on January 19, 2001. Dr. McClure also noted that plaintiff's condition was chronic, and that pain limited her daily activities. However, Dr. McClure failed to indicate when plaintiff might return to work.

By letter dated November 11, 2004, defendant advised plaintiff of its receipt of her claim for Long Term Disability, and that an initial review had been completed. By letter dated December 30, 2004, defendant advised plaintiff that a 30 day extension would be needed in order to make a decision on her claim. By letter dated February 7, 2005, defendant advised plaintiff that the claim review was continuing, specifically, as to whether the "Recurrent Disability" provisions would apply, and therefore, additional medical documentation would be needed[2]. On February 9, 2005, plaintiff commenced suit in this court for breach of insurance contract, and for a declaratory judgment against defendant for accrued monthly disability benefits.

Summary Judgment Standard

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Livingston v. South Dakota State Medical Holding, 411 F.Supp.2d 1161, 1163 (D.S.D. 2006). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Livingston, at 1163; quoting, Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624 (8th Cir. 1995). In considering a motion for summary judgment, the facts must be viewed in a light most favorable

---

[2] The letter notes that plaintiff went out on disability on June 1, 2003, and returned to work on March 1, 2004. Since plaintiff claimed a disability as of August 21, 2004, for the same condition, i.e. Recurrent Condition, defendant would need all pain management records from August 21, 2004, through the present.

3

to the non-moving party and the non-moving party must be given the benefit of all reasonable inferences that can be drawn from the facts. Livingston, at 1163. As already noted, the parties have filed cross-motions for summary judgment. Id. Where the parties file cross-motions, the standards by which the motions are decided do not change. Id. Each motion must be evaluated independently, "taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Id.

ERISA Standard for Exhaustion of Administrative Remedies

It has been held that "although ERISA itself contains no exhaustion requirement, beneficiaries must exhaust their administrative remedies if such exhaustion is mandated by the ERISA plan at issue." Livingston, at 1165; quoting, Burds v. Union Pacific Corp., 223 F.3d 814, 817 (8th Cir. 2000). "It is well-established that when exhaustion is clearly required under the terms of an ERISA benefits plan, the plan beneficiary's failure to exhaust her administrative remedies bars her from asserting any unexhausted claims in federal court." Id. However, "ERISA plan beneficiaries are not required to exhaust their claims if they can demonstrate that exhaustion 'would be wholly futile .' " Livingston, at 1165; Burds, at 817 n.4.

Plaintiff claims entitlement to disability benefits because an inordinate period of time elapsed without defendant ruling on her claim. She contends that this should result in a finding that it would be futile for her to comply with exhaustion requirements. Yet, plaintiff fails to cite any case law that would support such an argument.

It has been held that under certain circumstances ERISA plan beneficiaries are not required to exhaust their claims if they can demonstrate that exhaustion would be futile. Glover v. St. Louis-

4

S.F.R. Co., 393 U.S. 324 (1968); see also, Vaca v. Sipes, 386 U.S. 171, 185 (1967) (the union's wrongful refusal to process the grievance prevented the employee-plaintiff from exhausting his contractual remedies). In Glover, the Court held that the exhaustion requirement is subject to a number of exceptions for the variety of situations in which doctrinaire application of the exhaustion rule would defeat the overall purposes of federal labor relations policy. Glover, at 329-30. However, the Court also noted that it was a well-settled principle that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement[3]. Id.

Here, plaintiff points to medical reports completed by various physicians and medical facilities submitted in support of her claim. Defendant argues that these reports, dated for the period of 2001 through 2003, are insufficient for the plan administrator to render a decision on plaintiff's claim for which she seeks disability benefits[4]. Therefore, by letter dated February 7, 2005, defendant advised plaintiff that her claim could be treated as one for a recurrent condition, and requested additional medical documentation.

---

[3] See also, Wootten v. Monumental Life Ins. Co., 412 F.Supp.2d 1020, 1024 (E.D.Mo. 2006) (exhaustion is not required when the plaintiff does not know of the plan remedies because he never received a copy of the plan documents; citing, Back v. Danka Corp., 335 F.3d 790, 792 (8th Cir. 2003). Exhaustion is also not required when the plaintiff has no actual knowledge of the plan's appeal procedure. Id.; citing, Conley v. Pitney Bowes, 34 F.3d 714, 718 (8th Cir. 1994); see also, Metropolitan Life Ins. Co. v. Person, 805 F.Supp. 1411, 1419 (E.D.Mich. 1992) (exhaustion is not required of non-employee beneficiaries who could not be expected to be aware of ERISA's exhaustion requirements); overruled on other grounds by, Metropolitan Life Ins. Co. v. Fowler, 922 F.Supp. 8 (E.D.Mich. 1996).

[4] Plaintiff states that she also submitted records from Midwestern Regional Medical Center for the period of 2001, through 2005. (Supporting Suggestions: ¶ 30). Defendant denies receipt of any medical records for 2004 and 2005, and the record does not indicate said records.

Plaintiff argues that by requiring her to submit additional medical documentation, defendant impermissibly shifted this responsibility to her. Under the section entitled "proof of your claim," the Plan states that a claimant may be required to provide, at his or her own expense, the name and address of hospitals and attending physicians. (Defendant's Supporting Suggestions: Ex. A). This section of the Plan also states, that in the case of a continuing disability, proof of regular care under a doctor may also be required, at the claimant's expense, and that in some cases, an authorization will be required so that defendant can obtain additional medical information. Plaintiff complains that by its letters dated December 30, 2004, and February 7, 2005, defendant impermissibly sought to shift responsibility to her for gathering evidence, as a "stalling tactic." Yet, plaintiff next admits that while it was in her best interest to make sure the information was submitted, the obligation under the law rested with defendant.

In support of her argument plaintiff relies on Rizk v. Long Term Disability Plan of Dun & Bradstreet Corp., 862 F.Supp. 783 (E.D.N.Y. 1994), for the proposition that an administrator has an affirmative responsibility to gather information that bears on the claim and is reasonably available. The facts in Rizk, are distinguishable in that there was information that was "reasonably available," and the defendant was given the opportunity to conduct a psychiatric exam of the plaintiff, yet, chose not to do so. Rizk, at 792. In cases where such information has not been made so readily available, it has been consistently held that a plan administrator does not have a duty to gather information in addition to that submitted with the claim. Sollon v. The Ohio Casualty Insurance

6

Company, 396 F.Supp.2d 560, 586 (W.D.Pa. 2005); Stith v. Prudential Ins. Co. of America, 356 F.Supp.2d 431, 440 n.3 (D.N.J. 2005)[5].

Moreover, plaintiff acknowledges receipt of the February 7th letter requesting certain medical documents, but does not offer a reason for her failure to respond to this request; even if only to state that notwithstanding her requests, the medical providers failed to respond. Rather, plaintiff complains that as of December 16, 2005, a decision on her claim still had not been rendered.

The record before me does not reflect whether plaintiff does not have access to the requested medical information. However, defendant argues, and plaintiff has not disputed, that in the letter dated November 11, 2004, defendant advised plaintiff it contacted her doctors to obtain medical information relevant to a decision on her claim, and defendant requested that plaintiff encourage her doctors to respond in a timely fashion in order to avoid delays in the processing of her claim. (Defendant's Supporting Suggestions: ¶ 8). Defendant contacted plaintiff by phone on December 2, 2004, to inform her that the processing of her claim continued. (Id: ¶ 9). On January 6, 2005, defendant again contacted plaintiff by phone and advised her that medical records from her visit to a pain management clinic on August 27, 2004, remained outstanding. (Id: ¶11). Defendant repeated this request by telephone on January 25, 2005, and plaintiff stated that she would send the documentation as soon as she received it[6]. (Id: ¶ 12). By telephone on February 1, 2005, plaintiff

---

[5]See also, Doyle v. Nationwide Ins. Companies & Affiliates, 240 F.Supp.2d 328, 341 (E.D.Pa. 2003) where the court held that the administrator was under no affirmative duty to seek information regarding any claim for benefits.

[6]In a declaration attached to defendant's motion, Jeanette Zenner, Director for UNUM Life Insurance Company of America, averred that after reviewing the claim file, there are no records provided by either plaintiff or her physicians regarding treatment at the pain management clinic, or records of other treatment during the period of August 2004, to the present. (Defendant's Supporting Suggestions: Ex. B).

7

stated that pathology reports from a recent biopsy would be received February 4, 2005. (Id: ¶ 13). These telephone conversations between the parties are in addition to the letters from defendant noted above which advised plaintiff of the need for additional medical information.

Even after viewing the evidence in a light most favorable to plaintiff, this does not appear to be a case which presents circumstances that would fall under an exception to the exhaustion requirement, and plaintiff's motion will, therefore, be denied[7]. Of course, in the event of an unfavorable decision, after complying with the relevant appeal provisions of ERISA, plaintiff would be free to resort to this jurisdiction.

Plaintiff also contends that defendant failed to seek the initial 30 day extension within 45 days of receipt of plaintiff's claim. The parties agree that defendant received the claim on September 30, 2004, and notified plaintiff of its first 30 day extension by letter dated November 11, 2004. Contrary to plaintiff's contention, expiration of the 45 day window occurred on November 14, 2004, thus, the November 11th letter was timely.

It is apparent from the record at bar that some delay may be attributed to both parties. There is a dearth of relevant case law precisely on point where, as here, a dispute arises prior to a decision being rendered by the plan administrator. It appears that when a plaintiff fails to exhaust administrative remedies, his or her claims are simply barred from review in this jurisdiction. Schleeper v. Purina Benefits Association, 170 F.3d 1157, 1158 (8th Cir. 1999). However, it bears noting that in Schleeper, the dispute arose subsequent to an initial decision, prior to appeal. Conversely, in cases where the plan administrator has failed to comply with ERISA's procedural

---

[7]In view of plaintiff's failure to file a reply brief to her motion, or suggestions in opposition to defendant's motion for summary judgment, it becomes even more difficult to render a decision.

guidelines, remand has been ordered. Wertheim v. Hartford, 268 F.Supp.2d 643, 660-61 (E.D.Va. 2003). Nevertheless, under the circumstances here, and in the interest of justice, this action will be remanded and the parties directed to cooperate in dissemination of the relevant documents so that a "full and fair review" of plaintiff's claim may be undertaken.

Accordingly, it is hereby

ORDERED that plaintiff's motion for summary judgment (ECF doc. 11) is DENIED without prejudice to re-filing in the event of an unfavorable decision rendering the issue ripe for review before this court. It is further

ORDERED that defendant's motion for summary judgment (ECF doc. 13) is GRANTED, and this case is REMANDED to UNUM Life Insurance Company for a full and fair review of plaintiff's claim for disability benefits under the Plan consistent with this opinion.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

September 29, 2006

Kansas City, Missouri